IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TRACY EUGENE CONARD,<br><br>Defendant. | CR 20–22–M–DLC<br><br><br><br>ORDER |

On May 8, 2023, Defendant Tracy Eugene Conard filed a motion for sentence reduction and/or compassionate release from his 80-month federal drug sentence under 18 U.S.C. § 3582(c)(1)(A). (Doc. 65.) His projected release date is July 29, 2025. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed November 3, 2023). The government opposes the motion. (Doc. 68.)

## ANALYSIS

The First Step Act gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons and the reduction: (1) takes into consideration the sentencing factors set forth in 18 U.S.C. § 3553(a); (2) is warranted by "extraordinary and compelling reasons," or the defendant is at least 70 years old and has served at least 30 years in prison; and (3) is consistent with the applicable policy statements of the United

1

States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam). The Sentencing Commission's relevant policy statement adds that the Court may not reduce a term of imprisonment unless "the defendant is not a danger to the safety of any other person or to the community." U.S. Sent'g Guidelines Manual § 1B1.13(a)(2) (U.S. Sent'g Comm'n 2023).[1]

Mr. Conard argues that a reduction in his sentence is warranted because his parents "are unable to maintain their household and property, or provide personal care for themselves and each other because of their worsening chronic medical conditions." (Doc. 66 at 11.) For the reasons discussed below, the Court denies the motion.

## I. Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Mr.

---

[1] The United States Sentencing Commission recently revised § 1B1.13 of the Sentencing Guidelines Manual, in part, moving the Commission's policy statements that were previously in commentary notes into the actual Guidelines text. *See* 2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, First Step Act—Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 1, 2023) (available at https://www.ussc. gov/guidelines/amendments/adopted-amendments-effective-november-1-2023).

2

Conard filed a request for compassionate release/sentence reduction with the warden of the BOP facility where he is in custody. (Doc. 66-1 at 1.) The warden received Mr. Conard's request on December 10, 2021, and it was denied on December 17, 2021. (*Id.*) Thus, it would appear that Mr. Conard has exhausted his administrative remedies.

## II.     Extraordinary and Compelling Reasons

The Sentencing Commission provides explicit examples of what constitutes an "extraordinary and compelling reason," including "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S. Sent'g Guidelines Manual § 1B1.13(b)(3)(C) (U.S. Sent'g Comm'n 2023). The defendant may also "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the" examples provided by the Sentencing Commission, "are similar in gravity to" the examples provided. *Id.* § 1B1.13(b)(5). However, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." *Id.* § 1B1.13(d).

Mr. Conard's mother, Vola, is 73 years old and was diagnosed with Covid-19 in September 2021. (Doc. 66 at 13.) After contracting Covid-19, she contracted pneumonia, suffered acute respiratory failure, was hospitalized, and was placed on oxygen. (*Id.*) She also suffers from various other ailments, including

3

chronic neck pain, depression and insomnia, gastroesophageal reflux disease, a history of strokes, sleep apnea, and hypothyroidism. (*Id.* at 13–14.) She has also had retina surgery and uses a CPAP machine to sleep. (*Id.*) Mr. Conard's father, David, is 75 years old and suffers from atrial fibrillation, anxiety, bilateral lower extremity weakness, intermittent dizziness, and has a history of pulmonary embolism. (*Id.* at 14.) He also contracted Covid-19 and pneumonia, was hospitalized, and was placed on oxygen. (*Id.*)

    Mr. Conard has two brothers, Deaven and Shawn, who both reside near Vola and David. Deaven is disabled and is limited in what assistance he can provide; however, he is able to drive his parents to medical appointments. (*Id.* at 14–15.) Shawn provides some support, such as having his parents over for dinner, but is busy with his own businesses and family. (*Id.* at 16.) Mr. Conard argues that Shawn faces an "employment-versus-caretaking dilemma," wherein "[i]f Shawn were to increase the time he spends caring for his parents, he would be jeopardizing his employment or at least would have to work less, consequently placing David and Vola's care and the care of [Shawn's] children as risk because Shawn's monetary earnings are critical to providing for his family." (*Id.* at 18.) Mr. Conard and his brothers assert that their parents would be better cared for if Mr. Conard were released from custody. (*Id.* at 15–17.) Mr. Conard's home is next door to his parents', and he maintains a good relationship with them. (*Id.*)

While the Court is sympathetic to the fact that Mr. Conard's parents are aging and experiencing a decline in their health, Mr. Conard's situation is not extraordinary and compelling. In cases where district courts granted compassionate relief on the caregiver basis, the defendant was literally or functionally the *only* available caregiver to an individual with *significant* care needs and/or other circumstances also supported release. *See, e.g.*, *United States v. Alvarado*, 569 F. Supp. 3d 1039, 1040 (S.D. Cal. 2021) (granting early release where defendant had a 77 year old terminally ill mother, an 83 year old father with a heart condition, and no viable caretaker to provide the daily assistance needed); *United States v. Rojas*, Case No. 17cr337-LAB-4, 2021 WL 4690509 (S.D. Cal. Oct. 7, 2021) (granting early termination where defendant's child had multiple medical conditions and severe intellectual and developmental disabilities, the child needed constant assistance and had no viable caretaker, and defendant had already been released to a halfway house); *United States v. Morrison*, 501 F. Supp. 3d 957, 959 (D. Nev. 2020) (granting early release where defendant was the only viable caretaker for her minor children who had serious health issues and the defendant's unique circumstances and history warranted release); *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028 (E.D. Cal. Apr. 28, 2020) (granting early release where defendant's child was both physically and intellectually disabled, the child required constant supervision and assistance for every single

task, the child's physical and mental health were deteriorating, none of defendant's family could provide any care, and Covid-19 increased the difficulty in obtaining care).

David and Vola, although aging and experiencing health complications, are not incapacitated and there is no evidence that they require full-time care. Moreover, David and Vola have the support of Deaven and Shawn; and, while this support may not meet the entirety of David and Vola's needs, the Court is unpersuaded that the level of care Deaven and Shawn are capable of providing is so wholly insufficient so as to warrant Mr. Conard's early release from custody. Nor does the Court find that other circumstances, when considered in combination with David and Vola's needs, arise to the level of extraordinary and compelling reasons.

### III.  Section 3553(a) Factors

Furthermore, the federal sentencing objectives set forth in 18 U.S.C. § 3553(a) do not support granting Mr. Conard's request. Section 3553(a) requires the Court to consider the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational

training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Mr. Conard received a custodial sentence of 80 months for possession with intent to distribute controlled substance. (Doc. 51 at 1–2.) The investigation into Mr. Conard began after law enforcement started receiving information from various confidential informants that he was involved in drug trafficking. (Doc. 50 ¶ 11.) Law enforcement also received reports that Mr. Conard had acted violently toward people who owed him money for methamphetamine and that he had fully automatic assault weapons in his possession. (*Id.*) Because Mr. Conard has prior felonies, (*see id.* ¶ 43, 44), he is prohibited from possessing firearms.

A search of Mr. Conard's residence and vehicle revealed numerous semi-automatic handguns and rifles, a shotgun, a bolt-action rifle, ammunition, marijuana, methamphetamine, heroin, and various items associated with the distribution of controlled substances. (*Id.* ¶¶ 17–18.) Based on laboratory testing, Mr. Conard was deemed responsible for approximately 84.5 grams of marijuana, 52.94 grams of actual methamphetamine, and 9.91 grams of heroin. (*Id.* ¶ 21.) Mr. Conard's criminal history includes several states misdemeanors as well as state felonies for possession of a controlled substance with intent to deliver, assault with

a weapon, and criminal possession of dangerous drugs. (*Id.* ¶¶ 38–44.)

At the time of sentencing, Mr. Conard's total criminal history score was three and his criminal history category was II. (*Id.* ¶ 46.) His total offense level was twenty-nine, which included a two level increase for the possession of firearms. (*Id.* ¶¶ 26–35.) The Court sentenced Mr. Conard to a sentence below the guideline range of 97 to 121 months based on Mr. Conard's serious mental illness, history of substance abuse, and family support. (Doc. 52.) Thus, the Court has already granted Mr. Conard a variance to his custodial sentence based on the federal sentencing objectives set forth in § 3553(a).

Mr. Conard argues that the Court can strike a balance by increasing the term of Mr. Conard's supervised release and/or imposing more stringent conditions of supervision upon his release. (Doc. 69 at 6.) Mr. Conard also argues that concerns regarding public safety are allayed by the fact that Mr. Conard will be required to register with the State of Montana's Violent Offender Registry. (*Id.*) Neither argument is compelling.

Mr. Conard has previously failed to adhere to the terms of his supervision. In 2007, while on supervision with the State of Montana, Mr. Conard had his supervision revoked for violating conditions "related to possessing weapons, being untruthful, using drugs, fail[ing] to participate in treatment, and having association with felons," among other violations. (Doc. 50 ¶ 44.) While on pre-trial release in

this matter, Mr. Conard tested positive for methamphetamine. (*Id.* ¶ 4.)

Given the seriousness of the offense conduct, the history and characteristics of Mr. Conard, and the need to deter future criminal conduct, the Court finds that the federal sentencing objectives set forth in 18 U.S.C. § 3553(a) do not support Mr. Conard's early release from custody.

## CONCLUSION

Accordingly, IT IS ORDERED that Mr. Conard's Motion for Sentence Reduction and/or Compassionate Release (Doc. 65) is DENIED.

DATED this 6th day of November, 2023.

*Dana L. Christensen*
Dana L. Christensen, District Judge
United States District Court